



FILED
Jan 09, 2019
01:00 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Carolyn Miller | ) | Docket No. 2018-07-0022 |
| | ) | |
| v. | ) | State File No. 86061-2017 |
| | ) | |
| Old Folks Mission Center, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Allen Phillips, Judge | ) | |

---

**Affirmed in Part, Modified in Part, and Remanded**
**Filed January 9, 2019**

---

In this interlocutory appeal, the employee alleged a repetitive motion injury to her right hand and wrist while performing housekeeping and janitorial activities for her employer. The employer denied the claim, asserting the employee failed to provide timely notice of her alleged injury and failed to present sufficient evidence that the work activities were the primary cause of her condition. Following an expedited hearing, the trial court concluded the employee gave proper notice of her alleged injury and came forward with sufficient evidence indicating she would likely prevail at trial in proving a compensable injury. It awarded both past and ongoing medical benefits and temporary disability benefits. The employer has appealed. Upon careful consideration, we affirm the trial court's order in part, modify it in part, and remand the case.

Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge David F. Hensley joined. Presiding Judge Marshall L. Davidson, III, dissented.

A. Allen Grant, Nashville, Tennessee, for the employer-appellant, Old Folks Mission Center, Inc.

Carolyn Miller, Jackson, Tennessee, employee-appellee, pro se

**Factual and Procedural Background**

Carolyn Miller ("Employee"), a resident of Madison County, Tennessee, worked for Old Folks Mission Center, Inc. ("Employer"), as a housekeeper/janitor. Her job duties included vacuuming, dusting, cleaning windows and walls, emptying trash,

1

opening boxed supplies, and distributing supplies to residents. Employee alleged she suffered a gradual injury to her right wrist and hand that she reported to the assistant administrator of the facility on September 25, 2017. In an expedited hearing, the testimony was disputed regarding whether she claimed her condition was work-related at that time, or whether she merely reported she intended to seek medical attention. Regardless, she saw Dr. Harold Antwine, an orthopedic physician, on September 27, 2017. At that visit, she reported right wrist and thumb pain, which, according to the report, had been "gradual in onset with no injury." Dr. Antwine diagnosed de Quervain's tenosynovitis and offered her medication and a thumb splint. He recommended she return to see him in three to four weeks.

In his October 26, 2017 report, Dr. Antwine noted Employee "does a lot of repetitive activity that certainly could be a causative factor for this current problem." He recommended the continued use of anti-inflammatory medication and the splint. Employee testified her last day of work was October 27, 2017, because Dr. Antwine restricted her from working as of October 30. Following the October 26 appointment, she reported her condition to Employer as a work-related injury, but Employer did not provide a panel of physicians or initiate any workers' compensation benefits.

On November 17, 2017, Employee returned to Dr. Antwine and reported her symptoms were "some better." However, in his December 15, 2017 report, Dr. Antwine noted Employee had continuing complaints of pain and swelling in her right thumb. Dr. Antwine recommended surgery, and Employee indicated she wanted to proceed with surgery. He also continued the work restrictions through the date of the surgery. In an addendum to his December 15 note, Dr. Antwine stated, "[p]atient informed me today that she started as a janitor in January 2015, and her symptoms started September 2017."

Employee testified that although she intended to proceed with surgery in January 2018, the procedure was postponed because she was not able to pay the out-of-pocket costs. In a February 15, 2018 report, Dr. Antwine noted Employee's history of symptoms and her description of her job as requiring "a lot of repetitive activity." He then stated, "[i]t is my medical opinion that due to the repetitive nature of her job and the history supplied by the patient, I would consider this a work-related injury due to the repetitive activity."

Employer denied Employee's claim for two reasons. First, Employer alleged Employee failed to provide proper notice of a work-related injury or condition. Second, it alleged she did not come forward with sufficient proof to indicate her condition arose primarily from her employment. It is undisputed that Employer did not provide a panel of physicians when Employee first reported her condition in September 2017, or when she informed Employer she believed her condition was work-related in late October or early November 2017. Instead, on November 28, 2017, Employer issued a notice of

denial, indicating as the basis for its denial, "no medical evidence to support alleged carpal tunnel claim and lack of notice."

Following the expedited hearing, the trial court concluded Employee provided sufficient notice of her alleged work-related condition on November 3, 2017, was entitled to a panel of physicians, was entitled to continue treating with Dr. Antwine, who it designated as her authorized physician, was entitled to the payment of certain past medical bills, and was entitled to temporary total disability benefits from October 30, 2017 through January 25, 2018. Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2018). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2018).

## Analysis

*Notice*

Tennessee's Workers' Compensation Law mandates that "[e]very injured employee . . . shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury." Tenn. Code Ann. § 50-6-201(a)(1) (2018). That section additionally provides that "[n]o compensation shall be payable . . . unless the written notice is given to the employer within fifteen (15) days after the occurrence of the accident, unless reasonable excuse for failure to give the notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented." *Id.*

In 2001, section 50-6-201 was amended to add subsection (b), which addresses the time period in which an employee is required to provide notice of an injury that occurs as the result of gradual or cumulative events or trauma. As applicable here, subsection (b) provides as follows:

In those cases where the injuries occur as the result of gradual or cumulative events or trauma, then the injured employee . . . shall provide notice of the injury to the employer within fifteen (15) days after the employee:

(1) Knows or reasonably should know that the employee has suffered a work-related injury that has resulted in permanent physical impairment; or

(2) Is rendered unable to continue to perform the employee's normal work activities as the result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities.

Tenn. Code Ann. § 50-6-201(b).

Employer argues that because Employee was diagnosed with de Quervain's tenosynovitis on September 27 following "a few week history of right wrist and thumb pain," and because she conducted her own "research" to determine the possible causes of her condition, she should have given written notice of her alleged work injury within fifteen days of the September 27 diagnosis. We disagree. First, pursuant to section 50-6-201(b)(1), an employee is not required to give written notice of an alleged gradual injury until he or she "knows or reasonably should know" that he or she suffered a "work-related injury" that "resulted in permanent physical impairment." There is no evidence Employee knew or reasonably should have known on September 27 that her condition was both "work-related" and "resulted in permanent physical impairment." Thus, we conclude section 50-6-201(b)(1) is not applicable in this case.

Second, with respect to the requirements of section 50-6-201(b)(2), there is insufficient evidence Employee was restricted from working or rendered unable to perform normal work activities until after her appointment with Dr. Antwine on October 26, 2017. It is undisputed she reported her alleged work-related condition to Employer no later than November 3, 2017, which is within fifteen days of the date she was restricted from working by Dr. Antwine. Accordingly, we find no merit in Employer's argument on this issue, and we affirm the trial court's conclusion that Employer received legally sufficient notice of Employee's alleged work-related condition.

4

Employer's second issue concerns whether Employee met her burden of showing she is likely to prevail at trial in establishing a compensable injury. The trial court found she had. Although we find this issue to be a close question, we conclude the evidence does not preponderate against the trial court's determination at this stage of the case.

An injured worker has the burden of proof on every essential element of his or her claim. Tenn. Code Ann. § 50-6-239(c)(6). However, at an expedited hearing, an employee need not prove every element of his or her claim by a preponderance of the evidence but must come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at trial consistent with Tennessee Code Annotated section 50-6-239(d)(1). *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

Generally, to be compensable, an "injury by accident" must arise primarily out of and in the course and scope of employment and must cause death, disablement, or the need for medical treatment of the employee. Tenn. Code Ann. § 50-6-102(14) (2018). An "accidental" injury is one that is "caused by a specific incident, or set of incidents," and is "identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A). Furthermore, "[a]n injury causes . . . disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C).

In *Berdnik v. Fairfield Glade Community Club*, No. 2016-04-0328, 2017 TN Wrk. Comp. App. Bd. LEXIS 32 (Tenn. Workers' Comp. App. Bd. May 18, 2017), we considered whether an employee had come forward with sufficient proof at an expedited hearing to support the trial court's order for a panel of physicians. After receiving the employee's report of a work accident, the employer declined to provide a panel, and the employee sought treatment on her own. *Id.* at *3. Diagnostic testing revealed degenerative changes and a prior lumbar fusion surgery. *Id.* Several months later, the employer sent the employee for an independent medical evaluation, and that physician opined her reported work activities on the day of the alleged accident did not contribute "greater than 50% of her current condition." *Id.* at *5.

5

In reversing the trial court's order for medical benefits in the form of a panel of physicians, we explained:

> Employee failed to establish she was likely to prevail at trial in proving that her employment contributed more than fifty percent in causing a compensable aggravation of her pre-existing condition or the need for medical treatment, considering all causes, as section 50-6-102(14)(B) requires. . . . The only medical opinion in the record is that of Dr. Bolt, who opined that the employment did not contribute more than fifty percent in causing her condition. While we acknowledge that this opinion was rendered by Employer's physician rather than an authorized physician chosen from a panel, it is, nonetheless, the only medical opinion upon which we can rely in reviewing the trial court's decision. . . . While lay testimony may be probative on the issue of causation, it is insufficient to meet an employee's burden of proof in the absence of medical evidence.

*Id.* at *10-11 (citation omitted); *see also Willis v. All Staff*, No. M2016-01143-SC-R3-WC, 2017 Tenn. LEXIS 455, at *14 (Tenn. Workers' Comp. Panel Aug. 3, 2017) (At a compensation hearing, the physician "testified only that Employee's work activities on July 30, 2014, 'could have' contributed to the injury or were a 'possible' cause of the injury, 'in theory.' While this testimony may have been sufficient to establish causation under prior law, it is insufficient under the statutes applicable to this appeal.").

In the present case, we must consider whether the totality of the evidence presented at the expedited hearing supports the trial court's interlocutory order for medical benefits. One factor that distinguishes the present case from *Berdnik* is the nature of the expert medical proof submitted to date. In *Berdnik*, the only medical proof submitted at the time of the expedited hearing indicated the employee's back condition did not arise primarily from her work activities. Here, however, Dr. Antwine stated he considered Employee's condition to be a "work-related injury." While such a statement does not satisfy the standard of proof applicable at a compensation hearing, when considered with other evidence presented at the expedited hearing, it supports the trial court's determination that Employee is "likely to prevail" on this issue at trial.

Second, in *Berdnik*, the employer sought an expert medical opinion on the issue of causation and presented proof at the expedited hearing that the employee's condition did not arise primarily from her employment. In the present case, Employer did not authorize any medical treatment, did not seek to have Employee evaluated by any physician, and did not present any proof on the issue of medical causation at the expedited hearing. Instead, it relied on its arguments that Dr. Antwine's causation opinion was based on inadequate or incorrect information as to the nature of Employee's work duties and that his opinion did not meet the requirements of section 50-6-102(14).

Moreover, the lay testimony in the present case is decidedly different than what was presented in *Berdnik*. In that case, the employee sought benefits for the alleged aggravation of a pre-existing condition, and she testified to a single event she alleged caused the aggravation. We concluded that her lay testimony alone was not sufficient to indicate a likelihood of prevailing at trial in establishing that her alleged aggravation arose primarily from the work incident, especially in the face of expert medical testimony directly adverse to her position. In the present case, however, Employee is seeking to establish a gradual injury caused by repetitive work duties and overuse of her wrist and hand. Employee described her work duties as cleaning windows, dusting, sweeping, vacuuming, wiping down walls in thirty resident rooms, opening and breaking down boxes, and delivering supplies to residents. She further testified she described her work duties to Dr. Antwine, who considered her de Quervain's tenosynovitis to be a "work-related injury." In addition, Employer's witness, Duane Cherry, corroborated Employee's testimony regarding the type of work she performed, but stated, "I don't know if it was repetitive as far as doing the same thing hour after hour." Other than this testimony, Employer's proof did not contradict Employee's testimony regarding the repetitive nature of her work duties. Accordingly, unlike the proof in *Berdnik*, when Employee's testimony in this case is considered in conjunction with the causation statements in Dr. Antwine's reports, the totality of the evidence supports the trial court's interlocutory order for the initiation of benefits.

In his dissent, our colleague insists the expert medical proof presented at the expedited hearing amounts to no more than a speculative opinion based on the mere possibility that Employee's condition is related to her work activities. He further argues that the phrase "would likely prevail" as used in section 50-6-239(d)(1) requires an employee to satisfy the elements of the definition of a compensable "injury" based on what is, in effect, a preponderance of the evidence (probable). We respectfully disagree with these arguments for several reasons. First, Dr. Antwine said significantly more than "could be." In his February 15, 2018 report, Dr. Antwine stated, "it is my medical opinion that due to the repetitive nature of her job and the history supplied by the patient, I would consider this a work-related injury due to the repetitive activity." Although he earlier stated on two occasions her work activities "certainly could be a causative factor" in the development of her condition, the statement quoted above is the final opinion he expressed on the issue prior to the expedited hearing. Although this opinion does not meet the standard of proof required by section 50-6-102(14) by a preponderance of the evidence, we believe it supports the trial court's determination that Employee would likely prevail on this issue at trial.

Second, we have stated repeatedly the standard of proof at an expedited hearing is different than the standard of proof at a compensation hearing. Basic principles of statutory construction mandate that we consider the differences in these two standards, as set out in sections 50-6-239(c)(6) and 50-6-239(d)(1), respectively. In the first, an employee "shall bear the burden of proving each and every element of the claim by a

7

preponderance of the evidence" *unless* "the statute provides for a different standard of proof." Tenn. Code Ann. § 50-6-239(c)(1). On the other hand, with respect to expedited hearings, a trial judge is authorized to order the initiation of temporary disability benefits and medical benefits "on an expedited basis and enter an interlocutory order upon determining that the injured employee *would likely prevail at a hearing on the merits*." Tenn. Code Ann. § 50-6-239(d)(1) (emphasis added). These two standards are decidedly different, and we have emphasized that point in numerous prior opinions.[1] In fact, as we noted in *McCord*:

> A contrary rule would require many injured workers to seek out, obtain, and pay for a medical evaluation or treatment before his or her employer would have any obligation to provide medical benefits. The delays inherent in such an approach, not to mention the cost barrier for many workers, would be inconsistent with a fair, expeditious, and efficient workers' compensation system. *See* Tenn. Code Ann. § 4-3-1409(b)(2)(A) (2014). Moreover, we note that since an expedited hearing is interlocutory in nature, either party may present additional evidence at the final compensation hearing and ask the trial court to reverse or modify the interlocutory order.

*McCord*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9-10. In short, we reiterate the legislature deliberately established a lesser standard of proof to be applied at expedited hearings that authorizes trial courts to order the initiation of certain benefits on an interlocutory basis prior to the final trial of a case. In evaluating a request for benefits at an expedited hearing, the trial court must determine, based on the totality of the evidence presented at that time, whether the employee "would likely prevail" at trial. This necessarily involves some level of discretion. Moreover, we acknowledge that this standard encompasses something of the "unknown," since the nature and extent of all the evidence that may be presented at trial is unknowable at an expedited hearing. Nonetheless, that is the standard mandated by section 50-6-239(d)(1) and the one we must apply on appeal. In accordance with a similar standard applied by the Tennessee Supreme Court:

---

[1] *See, e.g.*, *McCord*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 ("subsection 239(d)(1) establishes a different standard of proof for the issuance of interlocutory orders at expedited hearings than the standard of proof required at compensation hearings"); *see also Thomas v. Zipp Express*, No. 2015-06-0546, 2016 TN Wrk. Comp. App. Bd. LEXIS 35, at *12-13 (Tenn. Workers' Comp. App. Bd. Aug. 2, 2016) ("While the medical records alone fall short of establishing compensability by a preponderance of the evidence, when such reports are considered in combination with Employee's testimony, which the trial court found to be credible, the evidence is sufficient to support the trial court's order for a panel of physicians."); *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sep. 29, 2015) ("this lesser evidentiary standard . . . allows some relief to be granted if [the] evidence [presented at an expedited hearing] does not rise to the level of a 'preponderance of the evidence'").

> We will not dictate to a trial court the measure of evidence necessary to determine whether to initiate temporary benefits. Similarly, we will not mandate how that evidence must be adduced. Indeed, in some cases a full evidentiary hearing may be necessary for the trial judge to make this determination. In others, the trial court may find sufficient evidence in the record upon which to base its determination, thereby making a hearing unnecessary. When deciding to initiate temporary benefits, the trial court must consider whether, from the record before it, the employee seeking benefits is likely to succeed on the merits of the claim. This standard is similar to those applied by the trial court when making other temporary judgments.

*McCall v. Nat'l Health Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003).

Third, our colleague seems to concentrate only on the opinions expressed by Dr. Antwine, without considering his statements in conjunction with other evidence presented at the expedited hearing. It is well-established that an employee's lay testimony regarding his or her injury or medical condition is probative as to the issue of medical causation. *See, e.g.*, *Arciga v. AtWork Personnel Services*, No. 2015-02-0217, 2016 TN Wrk. Comp. App. Bd. LEXIS 6, at *7 (Tenn. Workers' Comp. App. Bd. Feb. 2, 2016); *Lemons v. Ragan Serv. Ctr.*, No. 02S01-9202-CH-00015, 1993 Tenn. LEXIS 45, at *5 (Tenn. Workers' Comp. Panel Jan. 7, 1993). In the present case, we conclude the totality of the evidence, not merely Dr. Antwine's opinions, supports the trial court's determination.

Fourth, section 50-6-239(c)(7) states that the "findings and conclusions of the workers' compensation judge" are presumed correct unless the preponderance of the evidence is otherwise. *See also Phillips v. Carolina Constr. Solutions*, No. 2015-01-0208, 2016 TN Wrk. Comp. App. Bd. LEXIS 10, at *23 (Tenn. Workers' Comp. App. Bd. Feb. 26, 2016). Moreover, we are mindful of our duty "not to substitute our judgment for that of the trial court" with respect to factual determinations and issues of witness credibility. *Peterson v. McMillan's Roofing & HVAC*, No. E2013-02130-SC-R3-WC, 2014 Tenn. LEXIS 624 (Tenn. Workers' Comp. Panel Aug. 25, 2014).

Finally, Employer argues that Employee admitted "her household duties were essentially identical to her work duties," thereby supporting its argument that she did not establish she is likely to prevail at trial in proving a compensable gradual injury. However, there is no indication in this record that Employer presented any such information to Dr. Antwine or asked him to clarify whether his causation opinion would change given the nature of her household duties. Based on the proof as it was presented at the expedited hearing, the only medical opinion available to the trial court indicated Dr. Antwine considered Employee's condition to be a "work-related injury" due to

repetitive work activities, and this opinion supports the trial court's conclusion that Employee "would likely prevail" on this issue at trial.

In short, we conclude the evidence does not preponderate against the trial court's determination that Employee is likely to prevail at trial in establishing a compensable gradual injury. We caution that the proof as presented by Employee does not meet the preponderance of the evidence standard applicable at a compensation hearing, but it meets the lesser standard necessary to support the trial court's interlocutory order as provided in section 50-6-239(d)(1). Accordingly, we affirm the trial court's order for medical benefits and the payment of certain past medical bills.[2]

*Temporary Disability Benefits*

An employee is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Watson v. Labor Smart, Inc.*, No. 2015-06-1358, 2017 TN Wrk. Comp. App. Bd. LEXIS 13, at *14-15 (Tenn. Workers' Comp. App. Bd. Feb. 3, 2017). Employer conceded on appeal that Dr. Antwine "did restrict Employee from working," but it argues that the order for temporary disability benefits should be reversed because "the record is still devoid of evidence that the restriction actually pertained to a work injury." We disagree.

It is undisputed that Dr. Antwine restricted Employee from working as of October 30, 2017. He renewed his off-work restriction as of November 17, 2017 and continued it until December 15, 2017. On that date, he renewed the restriction again until mid-February 2018 (three weeks after her surgery, which was scheduled for January 25, 2018). Given that Dr. Antwine restricted Employee from working, that he considered Employee's condition to be a work-related injury, and that the record defines a specific period of temporary disability, we conclude the record supports the trial court's conclusion that some temporary benefits are owed.

The trial court ordered the payment of temporary disability benefits from October 30, 2017 through January 25, 2018. However, the record is unrefuted that Employee was paid wages through November 25, 2017. Accordingly, we modify the trial court's interlocutory order to require Employer to pay temporary disability benefits from November 26, 2017 through January 25, 2018.

---

[2] Employer did not appeal the trial court's designation of Dr. Antwine as the authorized treating physician. Thus, we need not address that aspect of the court's order.

## Conclusion

For the foregoing reasons, we affirm the trial court's conclusion that Employer received legally sufficient notice of Employee's alleged work-related condition, and we affirm the trial court's order compelling Employer to pay certain medical benefits, including additional treatment with Dr. Antwine. In addition, we modify the trial court's order for temporary disability benefits as discussed above, and we remand the case.



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Carolyn Miller | ) | Docket No. 2018-07-0022 |
| | ) | |
| v. | ) | State File No. 86061-2017 |
| | ) | |
| Old Folks Mission Center, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Allen Phillips, Judge | ) | |

---

**Dissenting Opinion—Filed January 9, 2019**

---

Marshall L. Davidson, III, Presiding Judge, dissenting.

Today's decision obligates a business to provide workers' compensation benefits when the proof fails to meet unambiguous, and fundamental, standards of the 2013 Reform Act. I write separately to explain why I disagree with it.

The medical evidence of causation is sparse and equivocal. Dr. Antwine's comment that he "would consider this a work-related injury" was prefaced with "could be." On another occasion, he stated the employee's work duties "could be a causative factor." There is no other medical proof of causation. Imposing liability based on medical evidence of what could or might be possible may have been acceptable at one time, but it is not today.

First, the 2013 Reform Act makes clear that an injury arises "'primarily out of and in the course and scope of employment' *only* if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B) (emphasis added). Further, an injury causes the need for medical treatment "*only* if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%)" in causing the need for medical treatment. Tenn. Code Ann. § 50-6-102(14)(C) (emphasis added). Establishing causation to a reasonable degree of medical certainty requires that a physician opine "it is more likely than not considering all causes,

1

as opposed to speculation *or possibility*."  Tenn. Code Ann. § 50-6-102(14)(D) (emphasis added).

Here, we have nothing more than a medical record indicating that, in the doctor's opinion, the injury "could be" caused by the employment and that he would "consider" the injury to be related to the employment.  There is nothing to suggest it is the doctor's opinion that the injury arose primarily out of the employment or that the employment contributed fifty percent or more in causing the need for medical treatment or words to that effect.  The employer in this case is being required to provide workers' compensation benefits despite this dearth of proof, despite the legislature's express pronouncement that "possibility" is not an acceptable benchmark for awarding benefits, and despite the statutory mandate that benefits be awarded "only" when certain conditions are met.

Second, the law is clear that, in order for benefits to be awarded prior to trial, the evidence must show the employee is "likely" to prevail at trial.  Tenn. Code Ann. § 50-6-239(d)(1).  Likely means "having a high probability of occurring or being true." https://www.merriam-webster.com/dictionary/likely (last visited December 28, 2018).  In a word, it means "probable."  Black's Law Dictionary (10th ed. 2014).  It is difficult to see how we can conclude, on the basis of the medical information before us, that the employee has a probability of prevailing at trial when there is not even sufficient evidence to establish she suffered a work-related injury as defined by statute.

Third, under today's decision, likely to prevail as used in the Reform Act does not actually mean likely to prevail.  Instead, it means could or might or possibly prevail.  As such, the decision violates the most basic rule of statutory construction of giving words their plain and commonly understood meaning.  *See Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 420 (Tenn. 2013).  Indeed, the decision runs afoul of a key aspect of the Reform Act itself, namely that the law be applied "fairly, impartially, *and in accordance with basic principles of statutory construction*" favoring neither side.  Tenn. Code Ann. § 50-6-116 (emphasis added).  Today's decision departs from this unambiguous mandate.

Fourth, today's decision marks a significant milestone in interpreting and applying the Reform Act by turning back the clock to a time when medical causation was assessed using a markedly different yardstick.  Dr. Antwine believed the employee's work "could be" the cause of her condition.  He said this not once, but twice.  That standard, however, along with its common variations such as *may be* the cause, *might be* the cause, *can be* the cause, *perhaps is* the cause, *possibly is* the cause, and the like, does not meet either the statutory definition of injury or the statutory standard of likely to prevail at trial.  These standards return us to a time when liability was difficult to predict, inconsistency was common, and uncertainty fueled litigation – the very problems that led to the 2013 reforms.

2

Fifth, this case will have wide-ranging implications, as it is the first time under the Reform Act a business has been held liable based on expert medical evidence of what could or might be possible. Rather than deciding this case using a pre-reform benchmark the legislature has expressly and unambiguously abrogated, I would decide it using the current statutory standard of what is likely or probable. I would also construe "only" in sections 50-6-102(14)(A) and (B) to mean just that. This is not to suggest that employees be required to prove every aspect of their case by a preponderance of the evidence before benefits can be initiated prior to trial. But it is to suggest they be required to prove, by the greater weight of the evidence, a likelihood of prevailing at trial. That standard is mandated by statute, and medical evidence that something could or might or may or possibly be the cause does not equate to what is likely or probable.

Last, by providing a definition of injury that requires a plaintiff to prove certain elements and by specifying that a court must find the plaintiff is likely to prevail at trial, the legislature established specific anchor points to which decisions regarding benefits must be tied. Today's decision abandons those anchor points and, as a result, there is no clear standard for determining whether an injury is causally related to the employment. This, in turn, reopens the door to inconsistent decisions, and it will be more difficult for parties and others to predict outcomes. The inevitable result will be more litigation rather than less, a result contrary to the legislative intent behind the 2013 reforms.

In short, today's decision embraces standards unmoored from the current *statutory* definition of injury and the current *statutory* threshold for awarding benefits prior to trial. While I agree with the majority that trial courts must have some measure of discretion in determining whether to award benefits, that discretion must be exercised within the fixed parameters of the law. When it is not so constrained, the rights and liabilities of the parties are determined by standards other than those set by the legislature, leaving the parties, trial judges, and us with standards that are undefined and subject to change from judge to judge and case to case.

I respectfully dissent.

3



| Carolyn Miller | ) | Docket No. 2018-07-0022 |
| | ) | |
| v. | ) | State File No. 86061-2017 |
| | ) | |
| Old Folks Mission Center, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Allen Phillips, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 9th day of January, 2019.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Sent to: |
|------|------|------|------|------|------|------|
| Carolyn Miller | X | X | | | | 46 Archwood Drive Jackson, TN 38301 |
| A. Allen Grant | | | | | X | agrant@eraclides.com |
| Allen Phillips, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | penny.patterson-shrum@tn.gov |

Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: WCAppeals.Clerk@tn.gov